IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANN L. BRESLIN, : | |
| : | |
| Plaintiff, : | |
| : | C.A. NO. _____ |
| v. : | |
| : | |
| STATE OF DELAWARE : | JURY TRIAL DEMANDED |
| DEPARTMENT OF NATURAL : | |
| RESOURCES AND ENVIRONMENTAL : | |
| CONTROL, : | |
| : | |
| Defendant. : | |

## COMPLAINT

### INTRODUCTION

1. This is a Complaint brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified as 42 U.S.C. § 2000e et seq., and Title I of the Civil Rights Act of 1991, 29 U.S.C. § 206(d).

### PARTIES

2. Plaintiff, Ann L. Breslin (hereinafter, "Plaintiff"), is an adult, female individual and has at all times relevant to this Complaint been a resident of the states of Maryland, Delaware, and Pennsylvania. She currently resides in Delaware County, State of Pennsylvania, at 327 Meeting House Lane, Apt. 2, Media, Pennsylvania 19063.

3. Defendant, State of Delaware Department of Natural Resources and Environmental Control (hereinafter, "Defendant" or "DNREC"), has at all times relevant to this Complaint been the employer of Plaintiff. The mission of the Delaware Department of Natural Resources and Environmental Control is to protect and manage

the state's vital natural resources, protect public health and safety, provide quality outdoor recreation and to serve and educate the citizens of Delaware about the wise use, conservation and enhancement of the environment. DNREC is comprised of the Office of the Secretary and five divisions: Soil & Water Conservation, Water Resources, Air & Waste Management, Fish & Wildlife and Parks & Recreation. Defendant is subject to service through the State of Delaware Department of Natural Resources and Environmental Control's main office, c/o DNREC, 89 Kings Highway, Dover, Delaware 19901

## JURISDICTION

4.      Jurisdiction is founded on the existence of a question arising under federal statutes. This action arises under Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 29 U.S.C. § 206(d). Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. § 2000(e), (f) and (g).

5.      This state law claim regarding the breach of the implied covenant of good faith and fair dealing is brought pursuant to the pendent jurisdiction of this Court.

## FACTUAL BACKGROUND

6.      Plaintiff was hired by Defendant to work in its "Superfund Branch," now known as the "Site Investigation and Restoration Branch" (hereinafter, "SIRB"), as a Seasonal Environmental Scientist I (hereinafter, "ES I"), on or about January 18, 1994, and was thereafter employed in Defendant's SIRB for approximately nine (9) years and one (1) month.

7. Within the first two (2) weeks after Plaintiff was hired, Mr. Keith Robertson was also hired by Defendant to work in the SIRB as an Environmental Scientist II (hereinafter, "ES II").

8. Neither Plaintiff nor Mr. Robertson had any experience with the federal or state Superfund or any other type of remediation/investigation of hazardous substance sites when they were hired. Both began their training in this field at the same time, which included their attendance of the OSHA 40-hour "HAZWOPER" training at the Environmental Protection Agency (hereinafter, "EPA") training facility in Cincinnati, Ohio.

9. In or around July of 1994, the Delaware State Auditor determined that seasonal positions, i.e., positions without benefits, could not be staffed for longer than 129 working days in any fiscal year. As a result of this determination, Plaintiff's manager, Mr. Karl Kalbacher, posted an ES II position. Plaintiff competitively interviewed for the position and was hired full time on or about November 1, 1994.

10. In or around the summer of 1995, Mr. Robertson's manager, Jamie Rutherford, prepared a career ladder promotion to an Environmental Scientist III position (hereinafter, "ES III"). Defendant had a policy at that time which stated that employees must be working at an upper-level position for a minimum of six (6) months before a career ladder advancement could be requested, which had to be documented by yearly performance reviews. Upon information and belief, Mr. Robertson received an advanced-hire salary of 82.5% of the midpoint of the accepted salary range; his starting salary was $33,182.

11. Plaintiff's manager determined that due to Plaintiff's superior performance reviews, advancement to an ES III position would be possible. Subsequently, Plaintiff's manager decided to post an external ES III and asked Plaintiff to competitively interview for the position.

12. Plaintiff was hired as an ES III, but at the minimum salary of $29,496. Plaintiff's manager then began to compile the information needed for an advanced-hire salary request package in order to bring Plaintiff's salary to $33,182; this request, however, was immediately denied, despite the fact that the advanced-hire salary request for Plaintiff was nearly identical to Mr. Robertson's request. The reason for the denial of Plaintiff's request, as cited by the Defendant's Human Resources Office (hereinafter, "DNREC HRO" or "HRO"), was that Mr. Robertson's North Carolina Coastal Archaeology work experience during his graduate school studies was considered more applicable to the ES III position than Plaintiff's Biology-related and Botany-related work experience during her college and graduate school studies. In addition, Mr. Robertson's protracted acquisition of his Master of Science degree (three (3) plus years) was considered as additional work experience. Plaintiff obtained her Master of Science degree in just eighteen (18) months and as a result, DNREC HRO decided that Plaintiff had *less* work experience.

13. In or around September of 1999, Mr. Robertson resigned from his position at DNREC to take a position in the environmental consulting field. Robertson's position remained vacant for a little over a year, until he was rehired by Defendant at a higher salary than he was making when he left.

14. In or around May of 2000, the DNREC Scientist Series employees, specifically, ES I to ES III, were informed that the Limited Maintenance Review of the ES Series would restore the Selective Market Variation (hereinafter, "SMV"), and would increase their pay scale to be equal with the Environmental Engineer Series. Each individual, according to the Merit Rules, would have his or her salary increased to the minimum of their pay grade; or, for those scientists whose salary was greater than the new minimum salary, those scientists would receive an additional 5% pay raise.

15. In or around May of 2000, there were two (2) individuals among the scientists in the SIRB who had been hired after 1993, and three (3) individuals who had been employees prior to the initial loss of the SMV who were then employed as ES IIIs. Plaintiff, however, was the only female in the SIRB who was an ES III; upon information and belief, Plaintiff was also the only employee who was being paid an entry-level salary both before and after the reinstatement of the SMV. All of Plaintiff's similarly-situated male co-workers received an additional 5% raise of their salaries due to the fact that their salaries were far in excess of the new minimum salary level.

16. On or about June 10, 2000, Plaintiff sent an e-mail to Ms. Merrylin Ramsey, head of DNREC HRO, asking for clarification of the Limited Maintenance Review. Plaintiff determined that even after the review, although she would receive an increase in pay, she would still be paid an entry-level salary for an ES III position, despite the fact that she had four (4) years in that position and possessed an advanced degree (Master of Science). Plaintiff stressed that all the ES IIIs in the SIRB were working under the exact same job descriptions and were expected to carry the same workload.

17. Ms. Ramsey never replied to Plaintiff's e-mail, so Plaintiff called Ms. Ramsey to request clarification of the Limited Maintenance Review issue. Ms. Ramsey agreed that the outcome of the Limited Maintenance Review might have seemed unfair, but stressed that Plaintiff should "be grateful for receiving a salary increase." Ramsey also stressed that the ES workgroup, of which Plaintiff was a member, was working on "fixing the problem with the salary disparities" within the specific branches.

18. Plaintiff's managers, Mr. Paul Will, Mr. Alex Rittberg and Ms. Christina Wirtz, Program Managers I and II respectively, began to discuss options for a DNREC HRO review of Plaintiff's history with Defendant and her advanced-hire salary issue. The managers agreed that the re-hiring of Mr. Robertson to his original position was the perfect opportunity to attempt to amend the salary disparity. Robertson had resigned from DNREC in September of 1999 and was rehired by DNREC into his still-vacant position a little over a year later at his fully-restored salary plus the 5% Limited Maintenance Review increase, which brought Robertson's total salary to $42,342 at that time.

19. On or about May 17, 2001, Plaintiff's immediate supervisor at that time, Mr. Paul Will, drafted a memorandum to the Acting Director of DNREC Air and Waste Management, Mr. William Hill, requesting that he forward an updated copy of Plaintiff's advanced-hire salary application package to DNREC HRO. Mr. Will also requested a review of the pay inequities that were happening in the SIRB.

20. On or about May 31, 2001, Mr. Will received a response from the Deputy Director, Marjorie Crofts, stating that she would not be forwarding the requested information to DNREC HRO; the response also stated that "this office does not recognize

the inequities created by this maintenance review." The memorandum that was written by Mr. Will clearly stated that the inequity about which the memorandum was written stemmed from an issue predating the Limited Maintenance Review – the initial denial of Plaintiff's advanced-hire salary request in 1996.

21. Plaintiff at that time was the only female ES III in the branch and, upon information and belief, was being paid an annual salary that was approximately $4,000.00 to $10,000.00 less than all of her similarly-situated other branch ES IIIs. All the other similarly-situated ES IIIs in the branch were males, and two (2) of them had been hired after Plaintiff. Specifically, of the three (3) ES IIIs hired after 1993 – two (2) of them in 1994 and one (1) in 1999 – Plaintiff was the only one who was being paid an entry-level salary. Upon information and belief, the two (2) remaining ES IIIs were receiving annual salaries of approximately $42,300.00 and $42,400.00 respectively.

22. On or about December 10, 2001, Plaintiff's branch supervisor, Ms. Christina Wirtz, sent a confidential memorandum with supporting documentation to then-Director of Air and Waste Management, Mr. John Blevins, requesting a "review of the previous advanced hire [materials] for Ann Breslin." In that memorandum, Ms. Wirtz summarized the history of the salary issues and noted the following:

> *Ms. Breslin is the only female Environmental Scientist III in SIRB and is being compensated significantly less than her male counterparts. In addition, Ms. Breslin had several more years seniority in State of Delaware service than two of the male ES IIIs in SIRB. This disparity may place the Department in a vulnerable position based on sex discrimination.*

23. On or about December 18, 2001, Mr. Blevins forwarded the memorandum from Ms. Wirtz to DNREC HRO and added his own concerns regarding the salary

disparity issues. Mr. Blevins noted that Defendant could be vulnerable for sexual discrimination.

24.     In or around June of 2002, Plaintiff requested information regarding the status of the review requested in the memoranda from Ms. Wirtz and Mr. Blevins. Ms. Ramsey replied, via e-mail, that she thought the issue had already been discussed with Plaintiff and requested that the memoranda and their supporting documentation be forwarded to DNREC HRO a second time. In or around July 2002, Plaintiff again requested a written response to the memoranda. In an e-mailed response directed to Ms. Wirtz, from Mr. Blevins, which also included other non-related personnel issues, Mr. Blevins told her [Wirtz] "not to hold [her] breath" about getting a written response to those memoranda from DNREC HRO.

25.     Plaintiff then informed DNREC HRO that she would be contacting the State Personnel Office for assistance. In an e-mail to Plaintiff dated July 30, 2002, Ms. Ramsey requested that Plaintiff resend the memo from Ms. Wirtz to DNREC HRO with the attached documentation for the third time.

26.     On or about September 3, 2002, Plaintiff received a copy of an August 16, 2002, memo to Ms. Wirtz from Ms. Ramsey; that memo officially refused the request for an equitable salary for Plaintiff. The determination stated that Plaintiff was being paid within the same salary range as the other ES IIIs who had the same experience and credentials as Plaintiff. However, the memo did not recognize Plaintiff's specific job experience within the highly technical SIRB, and also did not address the salary differential between the ES IIIs in the SIRB.

27. Plaintiff then notified Defendant of her intention to file a grievance with the state as well as her intent to file a claim under the Equal Pay Act with the Delaware Department of Labor.

28. With no other administrative remedy available to her, Plaintiff filed a Charge of Discrimination against Defendant with the Delaware Department of Labor on or about September 24, 2002 alleging gender discrimination.

29. Subsequent to filing her Charge of Discrimination with the Delaware Department of Labor, Plaintiff went forward with her First Step Hearing in the grievance process for her grievance against Defendant which took place on or about October 15, 2002. Plaintiff's grievance was immediately denied. The decision issued by the Director of Air Waste Management, Mr. John Blevins, noted that Defendant believed Plaintiff was being paid commensurate with the other ES IIIs. However, the pay disparity within the SIRB was not specifically addressed in the decision.

30. Plaintiff continued with her grievance and moved forward to the Second Step Hearing in the grievance process which took place in or around November of 2002. Once again, Plaintiff's grievance was denied. Defendant cited a "distinguishable and supporting difference in the qualifications of [Plaintiff's] colleagues which justify their current salaries being higher," and also stated that Plaintiff "knowingly accepted a lower salary back in 1996 when she accepted the position."

31. Plaintiff continued to appeal her grievance and moved on to the Third Step Hearing of the grievance process which took place on or about January 29, 2003. During that hearing, Plaintiff asked the DNREC HRO representatives who were present at that hearing, Mr. Steve Karlsen and Ms. Ramsey, to state directly to her [Plaintiff] whether or

not they believed that Plaintiff deserved to be paid less than Mr. Robertson. They both admitted that Plaintiff should have been paid the same as Mr. Robertson, but "sadly" Defendant lacked a mechanism to "level up [Plaintiff's] salary." They both maintained that if there was such a mechanism in place, they would have "done it in a second."

32. Following that hearing, on or about February 3, 2003, Mr. Karlsen prepared and signed a Stipulation for the hearing officer that clarified the "leveling up" issue.

33. Plaintiff hoped that the hearing officer would have included that Stipulation in her decision in order to allow for an appeal to the State Merit Review Board (hereinafter, "MERB") in the future. Coincidentally, however, the hearing officer finalized her decision on the very same day that the Stipulation was signed, February 3, 2003, thus precluding the Stipulation from being included in the decision.

34. During the Third Step Hearing regarding Plaintiff's grievance, the State Personnel Office determined that Plaintiff had not been discriminated against based entirely on the information that was supplied to it by Defendant. However, the hearing officer noted, contrary to Defendant's position, that Plaintiff had not waited too long to file her grievance in response to Defendant's position that Plaintiff should have filed her grievance in late 1996 or early 1997.

35. In or around early February 2003, Plaintiff was offered a position with the United States Environmental Protection Agency ("US EPA"). Plaintiff became an employee of the US EPA on or about February 23, 2003. At that time, Mr. Karlsen attempted to disqualify Plaintiff's continuing appeal to the MERB based on the fact that Plaintiff was no longer an employee of the State of Delaware.

36. On or about May 4, 2004, Plaintiff received a letter from her attorney informing her that her appeal to the MERB was scheduled for May 24, 2004. That hearing was subsequently continued and rescheduled for late August 2004.

37. The Delaware Department of Labor investigated Plaintiff's Charge of Discrimination alleging gender discrimination and found in favor of Plaintiff, citing reasonable cause that violations of Title VII and 19 Del. C. § 711 had occurred. Plaintiff received a Notice of Reasonable Cause Finding from the Delaware Department of Labor dated June 30, 2004. A copy of the Delaware Department of Labor's Notice of Reasonable Cause Finding dated June 30, 2004 is attached hereto as Exhibit "A."

38. Plaintiff was issued a Notice of Right to Sue letter from the Equal Employment Opportunity Commission on February 14, 2005. A copy of the EEOC's Notice of Right to Sue letter dated February 14, 2005 is attached hereto as Exhibit "B."

## COUNT I
## GENDER DISCRIMINATION

39. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 38 and incorporates the same by reference as if fully set forth herein.

40. The practices of Defendant as complained of above, had the effect of depriving Plaintiff of equal employment opportunities and otherwise adversely affected her employment because of her gender. The practices employed by Defendant were intentional and were done with malice and/or reckless indifference to the federally-protected rights of Plaintiff.

41. The practices of Defendant as complained of above caused Plaintiff to experience conscious pain and suffering and other emotional harm.

42. The practices of Defendant, as described above, are imputable to Defendant in violation of 42 U.S.C. § 2000e-2(a) and 3(a).

43. Defendants intentionally and maliciously discriminated against Plaintiff on the basis of her gender (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a) when it:

   (a)  treated Plaintiff differently from her similarly-situated male co-workers by denying Plaintiff equal pay, benefits, seniority and/or promotional/transfer opportunities; and

   (b)  treated Plaintiff differently from her similarly-situated male co-workers by subjecting her to different job performance and/or job requirement and/or educational and/or seniority standards.

44. As a direct and proximate result of Defendant's unlawful gender discrimination, Plaintiff has suffered, and continues to suffer, loss of employment opportunities, loss of income, loss of other employment benefits, and has suffered, and continues to suffer, distress, humiliation, great expense, embarrassment and damages to her reputation.

## COUNT II
## VIOLATION OF THE EQUAL PAY ACT

45. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 44 and incorporates the same by reference as if fully set forth herein.

46. The practices of Defendant as complained of above are in violation of the Equal Pay Act, 29 U.S.C. § 206(d).

## COUNT III
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

47. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 46 and incorporates the same by reference as if fully set forth herein.

48. The actions of Defendant constitute a violation of the Covenant of Good Faith and Fair Dealing implicit in every employment agreement.

49. Defendant breached the Covenant of Good Faith and Fair Dealing to Plaintiff by discriminating against her based on her gender (female), and by failing to provide equal pay and advancement opportunities.

50. Defendant's discrimination was willful, wanton, and malicious. As a result, Plaintiff is entitled to an award of compensatory and punitive damages.

51. The above-stated damages were not the result of any act or omission on the part of the Plaintiff.

**WHEREFORE**, Plaintiff Ann L. Breslin, respectfully requests that this Court enter judgment in her favor and against Defendant, State of Delaware Department of Natural Resources and Environmental Control:

(a) Declaring that the conduct engaged in by the Defendant to be in violation of Plaintiff's rights;

(b) Issuing a judgment in Plaintiff's favor ordering Defendant to provide appropriate back pay with pre- and post-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

(c)  Issuing a judgment in Plaintiff's favor ordering Defendant to provide compensation for non-pecuniary losses, including, but not limited to, pain, suffering, and humiliation, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices;

(d)  Issuing a judgment in Plaintiff's favor ordering Defendant to provide compensation for past and future pecuniary losses, in amounts to be determined at trial;

(e)  Issuing a judgment in Plaintiff's favor ordering Defendant to pay punitive damages for its malicious and/or reckless conduct in amounts to be determined at trial;

(f)  Issuing a judgment in Plaintiff's favor ordering the Defendant to pay the costs of reasonable attorneys' fees and expenses and the costs of this litigation; and

(g)  Granting such other further relief as this Court deems just and proper.

MARGOLIS EDELSTEIN

*Keri L. Morris*
Jeffrey K. Martin, Esquire (#2407)
Keri L. Morris, Esquire (#4656)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 phone
(302) 777-4682 facsimile
jmartin@margolisedelstein.com
kmorris@margolisedelstein.com
Attorneys for Plaintiff Ann L. Breslin

Dated: May 13, 2005