ATTACHMENT 1


Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2004 WL 1427077 (Del.Supr.)
**(Cite as: Slip Copy)**

**H**

Only the Westlaw citation is currently available.
NOTICE: THIS OPINION HAS NOT BEEN RELEASED
FOR PUBLICATION IN THE PERMANENT LAW RE-
PORTS. UNTIL RELEASED, IT IS SUBJECT TO REVI-
SION OR WITHDRAWAL.NOTE: THIS OPINION WILL
NOT BE PUBLISHED IN A PRINTED VOLUME. THE
DISPOSITION WILL APPEAR IN A REPORTER TA-
BLE.

Supreme Court of Delaware.
H. Diana KOPICKO, Plaintiff Below, Appellant,
v.
STATE OF DELAWARE, THE DEPARTMENT OF SER-
VICES FOR CHILDREN, YOUTH AND THEIR FAMIL-
IES, Defendants Below, Appellees.
**No. 521, 2000.**

Submitted May 25, 2004.
Decided May 28, 2004.

**Background:** Former state employee brought action against
Department of Services for Children, Youth and Families,
alleging breach of implied covenant of good faith and fair
dealing. The Superior Court, Kent County, entered summary
judgment in favor of department, and employee appealed.
The Supreme Court stayed appeal pending employee's ex-
haustion of administrative remedies. Employee then ap-
pealed to Merit Employee Relations Board, which upheld
termination, and the Superior Court affirmed.

**Holding:** The Supreme Court, Jacobs, J., held that employ-
ee who exhausted administrative remedies was not entitled
to appellate review of summary judgment in employer's fa-
vor.

Appeal dismissed.

West Headnotes

**Officers and Public Employees 283 ⚖➞72.33(1)**

283 Officers and Public Employees
283I Appointment, Qualification, and Tenure
283I(H) Proceedings for Removal, Suspension, or Other
Discipline
283I(H)2 Administrative Review

283k72.33 Determination and Disposition
283k72.33(1) k. In General. Most Cited Cases
Former state employee was not entitled to appellate review
of order granting summary judgment in favor of employer
in action for breach of covenant and good faith and fair
dealing, arising from her termination during probationary
period, after she had exhausted her administrative remedies
with Merit Employee Relations Board that upheld termina-
tion, where breach of contract suit was based on same fact
issue that underlied grievance to Board.

Court Below: Superior Court of the State of Delaware in
and for Kent County, C.A. No. 99C-12-036.

Before BERGER, STEELE and JACOBS, Justices.

*ORDER*

**\*1** This 28th day of May 2004, it appears to the Court that:

1. The appellant, Diana Kopicko, was terminated as an em-
ployee of the appellee, State of Delaware, Department of
Services for Children, Youth and their Families ("the De-
partment") during her probationary period. Kopicko sued
the Department in the Superior Court, challenging her dis-
missal as a breach of the implied covenant of good faith and
fair dealing. The Superior Court granted summary judgment
to the Department on the basis that sovereign immunity op-
erated as an absolute bar to Kopicko's claim. Kopicko ap-
pealed the Superior Court order granting summary judgment
to this Court.

2. In an Opinion issued on February 12, 2002, this Court
held that Kopicko's remedy was to pursue administrative re-
lief under the Merit System of Personnel Administration, by
filing a direct appeal with the Merit Employee Relations
Board ("MERB"). This Court stayed all proceedings in this
appeal to allow Kopicko an opportunity to exhaust her ad-
ministrative remedies.[FN1]

> FN1. *Kopicko v. Dept. of Services for Children,*
> 805 A.2d 877 (Del.2002).

3. Kopicko then appealed to the MERB, which held two
days of hearings and ultimately upheld the Department's ac-
tion in terminating Kopicko's employment. The MERB de-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                            Page 2
Slip Copy, 2004 WL 1427077 (Del.Supr.)
(Cite as: Slip Copy)

termined that the reasons for the appellant's termination during her employment were all merit, as opposed to non-merit, factors, and constituted a reasonable basis for the Department's determination that Kopicko's performance during her probationary period had been unsatisfactory. Kopicko then appealed the MERB decision to the Superior Court, which upheld the MERB's determination. [FN2] This Court thereafter affirmed the Superior Court's determination, holding that "the MERB's decision is supported by substantial evidence and is free from legal error." [FN3]

> FN2. *Kopicko v. Delaware Dept. of Services for Children,* 2003 WL 21976409 (Del.Super.2003).

> FN3. *Kopicko v. State Dept. of Services for Children,* 2004 WL 691901 (Del.2004).

4. On March 26, 2004, this Court issued a Notice to Kopicko, directing her to Show Cause why the instant appeal should not be dismissed. Although Kopicko argues that this appeal involves a different cause of action than her Merit System grievance, we conclude that this appeal must in all events be dismissed. Kopicko's exclusive remedy is the administrative remedy provided in the Merit System statute. [FN4] She exhausted that remedy, and has no further right of action. Moreover, the critical issue of fact that underlies her breach of contract action in the Superior Court (the subject of this appeal) is the same fact issue that underlies her Merit System grievance, specifically, whether Kopicko was terminated for a performance or merits-based reason. That fact issue was resolved adversely to Kopicko. Where, as here, an administrative agency has "decided an issue of fact necessary to its decision, the doctrine of collateral estoppel precludes relitigation of that issue in a subsequent suit or hearing concerning a different claim or cause of action involving a party to the first case." [FN5]

> FN4. 29 *Del. C.* § 5949.

> FN5. *Betts v. Townsends, Inc.,* 765 A.2d 531, 534 (Del.2000).

5. Accordingly, Kopicko's Superior Court action that is the subject of this appeal is barred, for two reasons. First, the Superior Court has no original subject matter jurisdiction

over the claim in that action. Kopicko's exclusive remedy was to litigate her grievance by appealing to the MERB, and to appeal any adverse decision by the MERB to the Superior Court, which by statute has appellate jurisdiction only. Kopicko availed herself of that remedy. Second, Kopicko's Superior Court claim is barred by operation of collateral estoppel, because the MERB, whose determination was affirmed by two courts and is now final, decided a fact that is central to that claim, adversely to Kopicko.

*2 6. Accordingly, Kopicko has failed to show cause why her appeal to this Court should not be dismissed.

NOW, THEREFORE, IT IS ORDERED that this appeal is DISMISSED.

Del.Supr.,2004.
Kopicko v. State, Dept. of Services for Children and their Families
Slip Copy, 2004 WL 1427077 (Del.Supr.)

END OF DOCUMENT

ATTACHMENT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANN L. BRESLIN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-290-GMS |
| | ) | |
| STATE OF DELAWARE, DEPARTMENT | ) | JURY TRIAL DEMANDED |
| OF NATURAL RESOURCES AND | ) | |
| ENVIRONMENTAL CONTROL, | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF MERRILYN E. RAMSEY**

Merrilyn E. Ramsey, being duly sworn, deposes and states as follows:

1.     From March 1, 1987 through the present, I have been employed by the

State of Delaware, Department of Natural Resources & Environmental Control

("DNREC") as the Administrator of the Human Resources Office.

2.     I make this affidavit in support of the defendant's motion for summary

judgment. I have personal knowledge of all of the facts set forth in this affidavit based on

my personal observation, experience and/or review of the books and records of the State

Personnel Office (presently called Human Resources Management) maintained in the

ordinary course of business.

3.     DNREC is charged with overseeing the environmental laws in the State of

Delaware. DNREC is organized into six major Divisions. The Divisions are the Office

of the Secretary; Air & Waste Management; Water Resources; Soil & Water

Conservation; Fish & Wildlife and Parks & Recreation.

1

4.    DNREC has numerous positions classified in the Environmental Scientist Series, a series in Delaware State Government that is, for the most part, unique to DNREC ("ES Series"). There are or have been ES Series positions in all of DNREC Division's Divisions except the Division of Parks & Recreation. The ES Series at DNREC was established as part of an Authorized Career Ladder by the State Personnel Office, pursuant to the Merit Rules.

5.    One of the Branches within the Division of Air & Waste Management is now called the Site Investigation and Restoration Branch (SIRB). The SIRB administers and oversees cleanups and remedial actions in sites contaminated with hazardous waste pursuant to the federal CERCLA and state statutes. There are various other branches within DNREC with ES 3 positions.

6.    In the summer of 1995, DNREC's longstanding, consistent practice was that in order to meet the minimum qualifications for a career ladder promotion to ES 3, a person had to have worked at the ES 2 level for at least one year.

7.    In 1995 and 1996, the Delaware DNREC Human Resources Office ("Human Resources") reviewed all advanced hire requests. Sharon Tazelaar, a female employee in the Human Resources Office, was the employee charged with reviewing all advanced hire requests at that time. I supervised Tazelaar and oversaw her performance. She and I often discussed particular cases. Tazelaar has since suffered a dehabilitating brain aneurism and received a disability pension. Consequently, Tazelaar is unable to testify concerning her review of advanced hire packages for Robertson or Breslin. Further, Tazelaar would have told me that she was not approving Breslin's request and she would have reviewed her reasons for taking that action with me. It was our

2

commonly followed practice for her to have notified me where a request for an advanced

hire was being denied or if our recommendation was going to be to recommend an

amount lower than that requested by the manager/candidate. Nonetheless, I have no

specific recollection of discussing Breslin's advanced hire packages related to the ES 3

positions with Tazelaar. I recall being aware of the compensation issues associated with

Robertson's rehire, the denial of his additional advanced salary request at that time, and

the reconstruction of his salary. At that time, the Appointing Authority for purposes of

the required Merit Rule approvals for Breslin's advanced hire request was the Delaware

DNREC and the Director was State Personnel.

      8.     Nonetheless, it was the longstanding, consistent practice of the Delaware

DNREC at the time that when a job classification called for "experience" in a particular

area, only actual work experience would count in calculating 1) whether a person would

meet the minimum qualifications for a position, and 2) whether a person would be

credited with "experience" related to an advanced hire determination. Further, it was the

longstanding, consistent practice of Delaware DNREC that a graduate or post graduate

degree would not substitute for experience in these situations. Currently, DNREC has

changed its practice and will grant credit related to graduate and post graduate degrees.

      9.     A substantial number of Delaware DNREC employees in the ES Series

were unhappy that State Personnel had removed the Selective Market Variation and with

what they perceived were inequities in compensation.

      10.    Human Resources formed a Committee in 2001. The Committee was

formed to review DNREC's existing process, criteria and methodology for advanced

salaries with a goal of modifying the current methodology or developing a new method

3

that would take into consideration the status of incumbents against the candidate and which would give acknowledgement for DNREC related experience. The Committee identified four major issues they believed had been created by the advance hire process: inequities, retention/morale, compensation and process. The greatest inequities to surface were among Divisions due to the frequent use of advanced salaries in some Divisions (such as Water Resources and Air & Waste Management) while other Divisions utilized it infrequently. The causes were found to be lack of knowledge of the process, and budgetary and fiscal resources. A proposal and recommendations to the Executive Team were drafted, but nothing ultimately resulted because State Personnel at that point had developed a uniform guideline for all agencies to use.

    11.    As a result of the Limited Maintenance Review of the ES Series, all paygrades were increased and all employees in the ES 3 position as of June 30, 2000, received an increase. When Breslin's ES 3 position was reassigned a higher paygrade effective July 1, 2000, Breslin received an increase in her salary to the minimum level of the new paygrade pursuant to MR 13.0110 because the minimum was more than a 5 percent increase. Persons who had received an advanced salary and thus were beyond the minimum of the paygrade received a 5 percent increase in accordance with the Merit Rule. Further, the salaries of the employees who originally had selective market pay (who had retained their higher salaries), received 5 percent because they were above the minimum. For the most part, this did not decrease the gap between the older employees and the newer employees. Many DNREC employees in the ES Series were not happy with what they perceived to be inequities caused by application of the Merit Rules.

4

12.    Merit Rule 5.0712 relating to the leveling up of salaries has never been applicable to the ES Series (after the removal of the Selective Market Variation) because the State has not been faced with any critical shortage of applicants for the ES Series.

13.    Robertson asked for an advanced hire upon his reinstatement. This Human Resources Office, upon consultation with State Personnel, denied the requested advanced hire, determining that MR 5.0720 required Robertson to be paid at a reconstructed salary equivalent to the amount he would have been receiving had he not left state service for the period of less than 2 years.

14.    I have reviewed the advanced hire packages for Robertson and Breslin and see a creditable difference in the amount of experience the paperwork demonstrates with respect to project management prior to being employed by DNREC. Due to the longstanding, consistent practice of the time, to receive an advanced hire the paperwork had to prove a person had actual prior working experience at the advanced level (in this case project management), and advanced degrees would not substitute for, or count as, experience. Breslin's advanced hire paperwork demonstrates substantially less experience in project management than Robertson's advanced hire paperwork. Most of the focus of Robertson's advanced hire memo and supplement is on his coastal geology work, which is where credit would have to have been given for his prior experience in project management work. Breslin's submission and supplement is on its face lacking in this criteria. Breslin's request cites experience as a laboratory assistant and a teaching assistant, which is not equivalent to project management. The other experience which she and her supervisor characterize as a wetlands scientist with the Chesapeake Bay Foundation might have been creditable if her work was project management. However,

the letter submitted as part of the supplement indicates that the majority of her time was spent composting data review requests and scheduling file review times. This letter does not recite the type of experience that would have been creditable as advanced experience, because it does not appear to be project management level work. Part of the advanced hire process is to evaluate whether granting an advanced hire would create a disparity between the employee requesting the advanced hire and existing employees. Robertson had just been granted an advanced salary of the same increment requested by Breslin's manager. Given that no credit would have been given for the advanced degrees, and given that Robertson had considerably more experience in project management, it would likely have been inequitable to Robertson and possibly others to grant the advanced salary requested by Breslin.

15.    I have reviewed this office's records related to Breslin's employment and in my opinion Breslin received all the appropriate wages due to her as a State of Delaware employee.

16.    Sharon Tazelaar was a valuable employee who took very seriously her obligations to ensure the Merit Rules, laws and procedures were followed consistently and fairly. Sharon advanced in State employment and managed other employees in her time under my supervision. I never saw her act in any way in a discriminatory manner towards anyone.

17.    At the time of the processing of the Grievances, my office surveyed the salaries of the various employees in the ES 3 series within the Division of Air & Waste Management at that time. The research demonstrated that females in the ES 3 series were receiving on average a slightly higher rate of pay than males in the ES 3 series.

18.    I never afforded any consideration to the gender of either Breslin or Robertson in my analysis of whether they were correctly granted or denied advanced salaries. For that matter, I have never given any consideration to the gender of either of these or any employee of DNREC in my employment decisions, except as necessary to ensure that those employees were treated equally. Further, I have never discriminated against Breslin or any other employee, and I have no reason to do so.

_Merrilyn E. Ramsey_
Merrilyn E. Ramsey

Subscribed and sworn before me this

28th day of August, 2006.

**MELANIE A. CAFFO**
Notary Public, State of Delaware
My Commission Expires April 17, 2008

_Melanie A. Caffo_
Notary Public

7

# ATTACHMENT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ANN L. BRESLIN,                              )
                        Plaintiff,           )
                                             )
        v.                                   )       C.A. No. 05-290-GMS
                                             )
STATE OF DELAWARE, DEPARTMENT )              JURY TRIAL DEMANDED
OF NATURAL RESOURCES AND          )
ENVIRONMENTAL CONTROL,            )
                                             )
                        Defendant.           )

## AFFIDAVIT OF LINDA MCCLOSKEY

Linda McCloskey, being duly sworn, deposes and states as follows:

1.      Since 1982, I have been employed by the State of Delaware in the

Classification area of the Human Resource Management Office (formerly called the State

Personnel Office). I have been the Classification Manager since July of 1990.

Management of Compensation was added to my job duties in July of 2001. In July of

2004 I took on additional management of Employment Services. Currently, I am the

Human Resources Administrator in the Classification/Compensation/Employment

Services Section of Human Resource Management.

2.      I make this affidavit in support of the defendant's motion for summary

judgment. I have personal knowledge of all of the facts set forth in this affidavit based on

my personal observation, experience and/or review of the books and records of the State

Personnel Office maintained in the ordinary course of business.

3.      The language of Merit Rule 3.0100, although it has been revised over the

years, has required the Director of State Personnel to establish and maintain a method of

classifying and reviewing all state employee positions so that positions substantially alike

in duties and responsibilities and requiring essentially the same knowledge, skills and abilities are grouped into the same class and paygrade.

      4.     The ES 3 positions in DNREC were classified in the same classification (ES 3), because the positions are substantially alike in duties and responsibilities, requiring essentially the same knowledge, skills and abilities, license or professional certification for satisfactory performance and using the same minimum education and experience requirements.

      5.     Under the Merit Rules, classifications are assigned minimum qualifications that an applicant must possess in order to qualify for a position. In Approved Career Ladders such as the ES Series, there will be minimum qualifications that differ between each step. The intent is for higher level duties to be accomplished by the higher level positions, and employees must possess or acquire the skills necessary to meet the higher level before they are promoted.

      6.     The Minimum Qualifications at the times pertinent to the lawsuit for the ES 2 classified positions were:

> Applicants must have education, training and or experience demonstrating competence in each of the following areas:
> 1.     Possession of a Bachelor's degree in one of the life, natural or physical sciences.
> 2.     Experience applying the methods and techniques used in assembling, analyzing and interpreting scientific or technical data, and the preparation of reports.
> 3.     Knowledge of environmental laws, rules and regulations.
> 4.     Knowledge of computers and computer information systems.
> 5.     Ability to communicate effectively both orally and in writing.

      7.     The Minimum Qualifications at the times pertinent to the lawsuit for the ES 3 classified positions were:

Applicants must have education, training and or experience demonstrating competence in each of the following areas:

1. Possession of a Bachelor's degree in one of the life, natural or physical sciences.

2. Experience analyzing data.

3. Experience in environmental/natural resources program or project management.

4. Experience in interpreting and applying environmental laws, rules and regulations.

4. Experience with computers and computer information systems.

5. Ability to communicate effectively both orally and in writing.

8. Each position in the ES Series has a rate of pay (numerical paygrade) assigned to it. The numerical paygrades each have an assigned range of salary (showing 80 percent of midpoint; 100 percent of midpoint; and 120 percent of midpoint for the 37.5 and 40 hour pay plans; 75 percent, 100 percent and 125 percent of midpoint for Selective Market Variation pay plan). The State of Delaware uses the The Hay Guide Chart Profile Method of job evaluation to determine pay grade assignment for all merit and merit comparable job classifications. The Hay Guide Chart Profile Method is a point factor job evaluation system for translating job duties and accountability into points that are then equated to a pay grade and corresponding salary range. The State of Delaware evaluates all job classifications according to the Hay Profile Method which includes three compensable factors, Know How, Problem Solving and Accountability that exist and can be measured in all jobs. Class specifications are evaluated by a Job Evaluation Committee composed of various State Managers and Subject Matter Experts who have been trained in applying the methodology. The same pay grade and corresponding salary range is applicable to all positions assigned to a specific job classification.

9. At times pertinent to this lawsuit, the lowest percentage of midpoint was 75 percent of midpoint. The salary structure with the percentages of midpoint were

designed with an intent to start an employee at the lowest percentage of midpoint. Merit Rule 5.0710 entitled Starting Rate on Initial Appointment provides that "[u]pon initial appointment to any position in the classified service, on or after July 1, 1986, an employee shall be paid a salary equal to the minimum percentage of midpoint for the assigned paygrade, except as hereinafter provided." Thereafter, the intent was to fund salary increases sufficient to move all satisfactorily performing employees upwards through the pay range.

10.    The State's pay plan was based on the concept that 100 percent midpoint is the "competitive market rate" and based on an annual salary survey, the 100 percent midpoint would be adjusted each fiscal year based on the established labor market comparators. In addition, the state merit pay structure was designed in concept so that all state employees would receive an annual pay increase in July of each year. Then, in September or January of each year, satisfactorily performing employees would also receive a "movement though the pay range increase" until they reached 100 percentage of midpoint. Proposals were developed for consideration by the Governor and General Assembly in 1987/1988 to provide "movement" opportunities in addition to the general salary increase for employees above the 100 percent midpoint; however, no proposal was accepted and implemented.

11.    Budget constraints almost immediately impacting the State of Delaware virtually did away with expected movement through the pay range (September or January) increases. Consequently, employees hired today are quite likely, and almost expectedly, being paid the same annual salaries as persons in the same classification who

have worked for the State of Delaware for years. This was not the intended result, but it is the way it has been implemented based on availability of funding for salary increases.

12.     The Merit Rules do provide a mechanism for starting an employee at a higher rate than the minimum. Rule 5.0711 provides that:

> "The Appointing Authority, may approve a starting rate higher than the minimum for the paygrade up to 80 percent of midpoint where the applicant's qualifications are clearly over and above those required as minimum by the class specification. The Director may approve a starting rate higher than the 80th percentile provided that such higher rate is requested in writing by the appointing authority and is clearly justified and contains applicable documentation of the applicant's qualifications."
> [Later enacted Budget Epilogue language changed Appointing Authority approval to 85 percent.]

The term routinely used to describe the process set out in Rule 5.0711 is to receive "an advanced salary".

13.     The Merit Rules provide for a "Selective Market Variation." "Selective Market Variation (SMV) is a process used to increase the salary range for job classifications where severe market competition makes it difficult for the State to recruit and retain qualified employees." As job markets increase rapidly, the ability to recruit skilled employees is sometimes diminished. This process allows adjustments to the salary ranges (minimum-midpoint-maximum) of a class without changing the official pay grade assignment.

14.     Sometime prior to July 1990, State Personnel determined that due to difficulties in recruiting and retaining qualified persons in the environmental scientist series, a selective market variation needed to be applied to the pay ranges associated with the ES Series, in order to fill the positions. Effective July 1, 1990 the Selective Market Variation pay ranges for the ES series remained frozen at the

1989 level. When the ES career ladder was established, it was State Personnel's
understanding based on information provided by DNREC that the State's ESs
were becoming more and more involved in pure scientific research. In 1990,
State Personnel was given information that DNREC had actually moved in a
different direction and were focusing on more applied and operational research
rather than pure scientific research. In July 1, 1991, maintenance review results
lowered the assigned paygrades for the ES series and at the same time, the SMV
ranges were lowered according to survey data that did not include pure research
scientists. The SMV result, rather than the paygrade assigned, is the reason that
the ES series had a lower pay range.

The Fiscal Year 1996 Budget Epilogue reflected "All classes assigned to selective market
variation who have not met the criteria to qualify for an adjustment for two consecutive
years effective in Fiscal Year 1995, shall have their midpoints reduced by seven percent
effective July 1, 1995. All classes whose midpoint is less than or equal to the midpoint of
the regular merit State of Delaware pay scale once the general increase has been applied
shall move back on to the State of Delaware pay plan. The process by which job classes
are removed from selective market variation to the regular merit State of Delaware pay
plan will not result in a reduction of salary for current incumbents who will move from
selective market to the regular merit State of Delaware pay plan" Accordingly, the ES
series was removed from the Selective Market Variation program effective July 1, 1995.

15.    State Personnel also instituted a limited maintenance review of the
Delaware DNREC ES Series pursuant to its obligation to review the classification system
under the Merit Rules. As a result of the limited maintenance review, State Personnel did

not reinstitute the Selective Market Variation, but it did change the paygrades assigned to

the ES Series to paygrades that were higher than the current paygrades. Those paygrade

reassignments were effective July 1, 2000.

16.    At times pertinent to the lawsuit, Merit Rule 5.0900 entitled "Pay Rates

after Reclassification or Grade Change" provided: "In the event that a position is

reclassified to a higher classification/paygrade, the rules concerning promotional pay

rates shall apply in the same manner as if the incumbent had been promoted."

17.    At times pertinent to the lawsuit, Merit Rule 13.0110 entitled "Pay Rate

Upon Promotion" stated:

> Whenever an employee is promoted, the salary rate shall be the minimum
> entry level of the higher paygrade or the lowest level of the higher
> paygrade that provides an increase of at least five percent (5). In
> exceptional circumstances, [the advanced hire language is repeated here.].

This MR provided an increase to the minimum of the new paygrade on any promotion, or

an increase of 5 percent, whichever is greater.

18.    At times pertinent to the lawsuit, Merit Rule 5.0720 entitled "Starting Rate

on Reinstatement" provided:

> When an employee is rehired into the same class in the classified service
> after separation from the State service of not more than two years, which
> separation was not due to discreditable circumstances, such employee
> shall be paid the same salary he/she received at the time of separation, plus
> any general salary increase since his/her separation. A salary in excess of
> this amount would have to be justified an authorized in accordance with
> 5.0711 and/or 5.0712.

19.    Merit Rule 5.0712 is the only Merit Rule provision regarding leveling up.

At times pertinent to the lawsuit, it provided:

> The appointing authority may request, and the State Personnel Director
> may approve, a starting rate higher than the minimum for the paygrade
> where a critical shortage of applicants exists. The State Personnel

> Director, in concurrence with the State Budget Director and the Controller
> General, after specifying all equally qualified incumbents of the same
> classification within the same geographic area receiving a lower rate, may
> provide that these employees shall also have their rates increased to the
> rate established for entrance if their performance is satisfactory.

This leveling up rule was intended to address a situation where the State was unable to

fill a position due to a critical shortage of applicants, and was required to pay a new

employee a higher salary in order to fill a position. Thus, the Merit Rules provide a

mechanism where the State can address pay inequities caused by the necessity of hiring a

new employee at a higher rate in order to fill a state need. However, application of this

leveling up rule would cause the state to have to increase the salaries of all equally

qualified employees in the same classification in the same geographic area (which has

never been interpreted more narrowly than in the same county).

      20.    I have reviewed documentation of the salary increases for both Breslin and

Robertson. My review indicates that both received all the required state merit increases

applicable to their positions.

/s/   Linda McCloskey
Linda McCloskey

Subscribed and sworn before me this

25th day of August, 2006.



Notary Public

ATTACHMENT 4

IN THE UNITED STATE DISTRICK COURT
IN AND FOR THE DISTRICT OF DELAWARE

ANN L. BRESLIN,                          :
                                         :
             Plaintiff,                  :
                                         :
     vs.                                 :C.A.No. 02-290-GMS
                                         :
                                         :
STATE OF DELAWARE DEPARTMENT OF          :
NATURAL RESOURCES AND ENVIRONMENTAL      :
CONTROL                                  :
                                         :
             Defendant,                  :
                                         :
                                         :

### AFFIDAVIT OF DEBRA LAWHEAD

Debra Lawhead, being first duly sworn according to law, deposes and says:

1. I am the Insurance Coverage Administrator of the State of Delaware.

2. My duties include administration of insurance coverage in all instances in which the State has waived sovereign immunity by establishing a State Insurance Coverage Program pursuant to 18 Del. C. Chapter 6501.

3. As the Insurance Coverage Administrator, I am responsible for administering the policies of the Insurance Determination Committee and therefore, I have personal knowledge of the policies established by that Committee.

4. I have reviewed the Complaint in the above-captioned case.

AFFIDAVIT OF DEBRA A. LAWHEAD
PAGE 2

5.  The State of Delaware and its agency (Department of Natural Resources and Environmental Control) thereof, has not purchased any insurance that I am aware of that would be applicable to the circumstances and events alleged in the Complaint against the State of Delaware and its agency (Department of Natural Resources and Environmental Control) in the above captioned matter.

6.  The General Assembly of the State has not appropriated any money for obtaining said insurance, nor has the General Assembly enacted any legislation pertaining to or allowing any possible liability of the State resulting from the facts as alleged in said Complaint.

7.  None of the commercial insurance secured for the State during any fiscal year provided for coverage for the type of injury asserted in the complaint in the above captioned matter.

8.  The facts and circumstances stated in this Affidavit are true and correct to the best of my knowledge.

_Debra Lawhead_
DEBRA LAWHEAD
Insurance Coverage Administrator
State of Delaware

SWORN TO AND SUBSCRIBED before me this 28th day of August, 2006

_Linda G. White_
NOTARY PUBLIC

**LINDA G. WHITE**
Notary Public, State of Delaware
My Commission Expires December 30, 2009