## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

ANN L. BRESLIN,                          :
                                         :
    Plaintiff,                       :
                                         :    C.A. NO. 05-290 (JJF)
        v.                       :
                                         :
STATE OF DELAWARE                        :    JURY TRIAL DEMANDED
DEPARTMENT OF NATURAL                    :
RESOURCES AND ENVIRONMENTAL:
CONTROL,                                 :
                                         :
    Defendant.                       :

## PLAINTIFF'S ANSWERING BRIEF
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
MARGOLIS EDELSTEIN
1509 Gilpin Avenue
Wilmington, DE 19806
(302) 777-4680
Attorneys for Plaintiff

DATED:  September 27, 2006

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF CITATIONS ............................................................................................. ii

STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ....................1

STATEMENT OF FACTS ........................................................................................2

STANDARD OF REVIEW .......................................................................................9

SUMMARY OF ARGUMENT ................................................................................10

I.    BRESLIN'S TITLE VII CLAIM IS NOT BARRED
      BY THE STATUTE OF LIMITATIONS.............................................12

II.   DNREC WILLFULLY PAID BRESLIN IN
      VIOLATION OF THE EQUAL PAY ACT.
      THEREFORE, BRESLIN'S EQUAL PAY ACT
      CLAIM IS NOT BARRED BY THE STATUTE
      OF LIMITATIONS.............................................................................15

III.  GENUINE ISSUES OF MATERIAL FACT EXIST.
      THEREFORE, DNREC IS NOT ENTITLED TO
      SUMMARY JUDGMENT ON COUNT I, THE
      TITLE VII GENDER DISCRIMINATION CLAIM. .........................16

IV.   GENUINE ISSUES OF MATERIAL FACT EXIST.
      THEREFORE, DNREC IS NOT ENTITLED TO SUMMARY
      JUDGMENT ON COUNT II, THE EQUAL PAY ACT CLAIM. ......20

CONCLUSION.........................................................................................................23

i

# TABLE OF CITATIONS

**CASES**                                                                      **PAGE**

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Campana v. City of Greenfield*
  102 F. Supp. 2d 1063 (E.D. Wisconsin 2000) . . . . . . . . . . . . . . . . . . . . . . .15

*E.E.O.C. v. Delaware Dept. Of Health and Social Services*
  865 F.2d 1408 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fuentes v. Perskie*
  32 F.3d 759 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Horowitz v. Fed. Kemper Life Assurance Co.,*
  57 F.3d 300 n.1 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
  475 U.S. 574 n.10, 89 L. Ed 2d 538, 106 S.Ct. 1348 (1986) . . . . . . . . . . .9

*McDonnell Douglas Corp. v. Green*
  411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973) . . . . . . . . . . . 16, 23

*Miller v. Beneficial Mgmt. Corp.*
  977 F.2d 834 (3d Cir. 1992) ,. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13, 16

*Pa. Coal Ass'n. v.; Babbitt*
  63 F.3d 231 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rush v. Scott Specialty Gasses, Inc.*
  113 F.3d 476 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stanziale v. Jargowsky*
  200 F.3d 101 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 20

*West v. Philadelphia Elec. Co.*
  45 F.3d 744 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## **Statutes**

19 Del. C. . §711 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

29 U.S.C. §206  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 15

29 U.S.C. §216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

29 U.S.C. §296(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

## **Other Authorities**

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

iii

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, Ann L. Breslin (hereinafter "Breslin") is a female former employee of the State of Delaware Department of Natural Resources & Environmental Control ("DNREC"). DNREC hired Breslin to work as an Environmental Scientist II in the Site Investigation and Remediation Branch of the Division of Air & Waste Management in 1994. Breslin resigned from her employment with DNREC on February 23, 2003. On May 14, 2005, Breslin filed a complaint alleging that DNREC discriminated against her based on her gender in violation of Title VII of the Civil Rights Act, the Equal Pay Act and Delaware State law.

Discovery in this case was completed on September 7, 2006. Pursuant to this Court's Rule 16 Scheduling Order, DNREC filed a Motion for Summary Judgment on August 28, 2006. This is Plaintiff's Answering Brief in opposition to DNREC's Motion for Summary Judgment.

Plaintiff does not intend to argue the merits of Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing nor does Plaintiff intend to argue the merits of DNREC's contention that the State cannot be assessed punitive damages. Rather, Plaintiff will concentrate her efforts on the issue of whether DNREC is entitled to summary judgment on Plaintiff's Title VII claim of gender discrimination and her claim that DNREC violated the Equal Pay Act. The record is abundantly clear that there are several genuine issues of material fact that should be decided by a jury. Therefore, DNREC's Motion for Summary Judgment should not be granted.

## STATEMENT OF FACTS

DNREC is comprised of the Office of the Secretary and five divisions: Soil & Water Conservation; Water Resources; Air & Waste Management; Fish & Wildlife; and Parks & Recreation (B-0001-0003). Breslin was hired by DNREC to work in what is now known as the "Site Investigation and Restoration Branch" (hereinafter "SIRB"), as a Seasonal Environmental Scientist 2 (hereinafter "ES 2"), on or about January 18, 1994. (B-0076, Breslin at 36).[1]  Within the first two weeks after Plaintiff was hired, Mr. Keith Robertson (hereinafter "Robertson"), was also hired by DNREC to work in SIRB as an ES 2. (B-0105, Robertson at 4). Neither Breslin nor Robertson had experience working in SIRB prior to being hired and both Breslin and Robertson began their training in this field at the same time. This included their attendance at the OSHA 40-hour "HAZWOPER" training at the Environmental Protection Agency (hereinafter "EPA") training facility in Cincinnati, Ohio. (B-0109, Robertson at 19-20). When Breslin and Robertson began their employment they were being paid the same salary of $22,998 and neither employee was credited with any prior work experience.  (B-0010 – 0014, B-0163, Wirtz at 13).

Thereafter, in 1994, Breslin competitively interviewed for an Environmental Scientist 3 (hereinafter "ES 3") position and was hired full time on or about November 1, 1994. (B-0076, Breslin at 36; B-0026).  In or around the summer of 1995, Robertson's manager prepared a career ladder promotion for Robertson to an Environmental Scientist 3 (hereinafter "ES 3") position. (B-0106, Robertson at 6). Robertson's career ladder promotion resulted in an advance-hire salary of 82.5% of the midpoint of the accepted salary range; his starting salary as an ES 3 was $33,182. (B-0189 - 0192).  Subsequently, Plaintiff's Manager, Karl Kalbacher (hereinafter

---

[1] **Wirtz at 61; Will at 15**: Wirtz and Will testified that the job duties of an environmental scientist in SIRB are not similar to the job duties of an ES 3 in another branch of the Division of Air and Waste Management. (B-0119, Will at 15; B-0175, Wirtz at 61).

"Kalbacher"), decided to post an external ES 3 position and Breslin competitively interviewed and was hired for the position. (B-0152, Kalbacher at 8). Breslin, with Kalbacher's approval, began to compile information regarding Breslin's background and experience for an advanced-hire salary request package in order to bring Breslin's salary to $33,182. (B-0030 - 0035).[2] However, Breslin's advance salary request was denied, despite the fact that the advance-salary request for Breslin was similar to that of Robertson.[3]  Breslin was told by Kalbacher that her advance hire request was denied because the Human Resources Office (hereinafter "HRO") did not consider Breslin's biology and botany experience as applicable work experience and that Robertson's coastal archeology experience was considered applicable work experience, along with the work he completed while in his Master's program. (B-0081, Breslin at 56). Based on conversations with Kalbacher, Breslin's Master's of Science Degree in Geo-Environmental Sciences, and related work experience as a botany laboratory assistant and wetlands scientist,

---

[2] **Kalbacher at 19**: Kalbacher  testified that he supported her advance hire request because Breslin did a good job for the Superfund program as reflected in her performance reviews and because of history of  work and her past work experience. **Kalbacher Answer at 20** "…She has handled an intensive workload that was at the full Environmental Scientist III Level, that she demonstrated excellent project management and organizational skills, and that she had past work experience that should be considered, and that she had excellent effective oral and written skills. (B-0155, Kalbacher at 19-20).

[3] **Wirtz Answer** at 19 ,20 ,23: "However, when I first came to the branch, there were a number of what appeared to be inequities. And this was one of the inequities. Ann made me aware of the situation. She presented the documentation regarding the advance hire request that she submitted and also, with Keith Robertson's permission, the advanced hire request that he submitted both in 1996. That of course, predated my time considerably. However, in review of the documents, I was concerned that the state may have been in a vulnerable position regarding sex-based or biased wages because there seemed to be a discrepancy between how Ann's advance hire was treated and how Keith's was treated…And the state feels very strongly about this. The state has just recently –the governor has signed an executive order, 81, that there shall be no discrimination across the board. So this was very important to me to have our HRO office review because I could not see why one advanced hire was granted and the other was rejected…I was not sure what the difference had been based on, why one had received the advance hire, the other had not…And my supervisor at the time, the director of the Division of Air and Waste Management, John  Blevins, didn't understand it either based on our review of these documents." (B-0165, Wirtz at 19-20,23).

3

were not considered applicable to the position. As such, her advance hire request was denied. (B-0170, Wirtz at 40).[4]

However, both Breslin and Robertson received Master's in similar fields. (B-0165, Wirtz at 21). Further, Breslin's wetlands and biology experience was directly comparable to Robertson's coastal geology experience. (B-0166, Wirtz at 24-25). While Robertson also had archeology experience, the field of archeology was "far removed" from the work in SIRB. (B-0166, Wirtz at 24). At the time of her 1996 advance hire request, Breslin had seven months' work experience at the Chesapeake Bay foundation as a wetlands scientist which is directly applicable to the work performed at SIRB. (B-0167, Wirtz at 26; B-0155, Kalbacher at 20).

In or around September of 1999, Robertson resigned from his position at DNREC to take a position in the environmental consulting field. In November of 2000, Robertson was rehired by DNREC with a 5% increase in his salary which brought his salary to $42,342, while Breslin was being paid significantly less for the same work. (KB, document from Paul Will's Ex). In May of 2000, Breslin was the only female non-seasonal employee in SIRB and she was the only ES 3 in SIRB being paid an entry-level salary both before and after the Limited Maintenance Review. (B-0083, Breslin at 63). According to Christina Wirtz, (hereinafter "Wirtz") a Program Manager II in SIRB, all other ES 3's in SIRB were being compensated at varying levels greater than Breslin's salary level and there appeared to be an equity issue between Robertson and Breslin which may be considered sex discrimination. (B-0047 - 0048). Breslin was being compensated significantly less than her male counterparts, despite the fact that she had several more years of experience in the State of Delaware service than two other ES 3's in SIRB. (B-0047 - 0048).

---

[4] **Kalbacher at 25, 26** testified that he has no recollection as to why Breslin's advance hire was denied nor did he receive anything in writing from HRO in 1996 explaining the reason(s) for the denial of Breslin's request. (B-0156 – 0157, Kalbacher at 25-26).

Breslin's managers, Paul Will (hereinafter "Will"), Alex Rittberg (hereinafter "Rittberg") and Wirtz began to discuss options for a DNREC HRO review of Breslin's history with DNREC and her advanced-hire salary issue. On or about May 17, 2001, Plaintiff's immediate supervisor at the time, Will, submitted an advance salary request for Breslin to DNREC's HRO. (B-0030 - 0035).[5] According to Will's memorandum, Breslin's experience and knowledge clearly exceeded the minimum requirements for an ES 3. (B-0030 - 0035).  On or about May 31, 2001, Will received a response from the Deputy Director, Marjorie Crofts, stating that she would not be forwarding the requested information to DNREC HRO; the response also stated that "This office does recognize inequities…and is attempting to find an acceptable resolution…" (B-0036). On or about December 10, 2001, Breslin's branch supervisor, Wirtz, sent a confidential memorandum with supporting documentation to then-Director of Air and Waste Management, Mr. Blevins, requesting "a review of the previous advance hire [materials] for Ann Breslin." (B-0047 - 0048). In that memorandum, Wirtz summarized the history of the salary issues and noted the following:

> ***Ms. Breslin is the only female Environmental Scientist III in SIRB and is being compensated significantly less than her male counterparts. In addition, Ms. Breslin had several more years' seniority in State of Delaware service than two of the male ES III's in SIRB. This disparity may place the Department in a vulnerable position based on sex discrimination.***

(B-0047). Wirtz was concerned that the State's implementation of its own policy concerning advanced hire requests was, in fact, discriminating against Breslin as a woman. (B-0165, Wirtz at 21). Wirtz opined that although Breslin was accomplished, she was not being compensated accordingly by DNREC and she had concerns that DNREC was violating Federal and State laws against discrimination. (B-0167, Wirtz at 29). Based on Wirtz's review of both advanced hire

---

[5]Will testified that he could not understand why they were not making the same amount because they were both good ES 3's, and that Breslin deserved an increase in her salary and she should not have been paid entry level after seven years of employment with DNREC. (B-0122, 0124, 0125, Will at 29,37,40-41)

request packages that were completed in 1996, Breslin's advanced hire request was treated differently because Breslin is female and Robertson is male. (B-0181, Wirtz at 82). Although the merit rules prohibit discrimination based upon gender, Wirtz opined that DNREC may be in violation of this part of the merit rules with respect to Breslin and Robertson. (B-0183, Wirtz at 93).

On or about December 18, 2001, John Blevins (hereinafter "Blevins") forwarded the memorandum from Wirtz to DNREC HRO and added his own concerns regarding the salary disparity issues. (B-0044 - 0046). Blevins noted that DNREC could be vulnerable for sexual discrimination. Blevins noted that,

> ***Based on my reading of the facts presented, I concur with Christina that the reason for an advance hire request denial for Ann is not apparent when compared to the approval of an advance hire request for Keith Robertson…If the facts bear out that a mistake was honestly made, I recommend that we address it as soon as possible. The ideal cure would be to retroactively apply the advance hire salary amount and any subsequent salary adjustments to that amount…I know the Division has the funding to support this action, and I believe we could implement the corrective action without modifying the current advance hire policy.***

(B-0045).

By 2002, Breslin was making $5,000 less than the next lowest paid ES 3 and she had been working there for seven years. (B-0173, Wirtz at 51). Within SIRB, Breslin's salary fell below other ES 3's with her same level of experience (B-0175, Wirtz at 61), notwithstanding the fact that all ES 3's in SIRB were working under a similar, if not exact, job description and were expected to carry the same workload. (B-0010 - 0014). In March of 2002, Breslin sent an email to Wirtz inquiring as to the status of HRO's review of the salary inequities. (B-0162, Wirtz at 9; B-0051). Thereafter, in June 2002, Breslin sent yet another email to Wirtz inquiring as to the

6

status of the pay inequities. (B-163, Wirtz at 10; B-0052). Again, on July 24, 2002, and July 30, 2002, Breslin sent two additional emails inquiring as to the status of HRO's review of the salary inequities. (B-0163, Wirtz at 11-12; B-0053 - 0054). Finally, on or about October of 2002, more than ten months after Blevin's memorandum, Breslin received a copy of an August 16, 2002, memorandum to Wirtz from Merrylin Ramsey (hereinafter "Ramsey"). That memo officially refused the request for equitable salary for Breslin. (B-0168, Wirtz at 30). The determination stated that Breslin was being paid within the same salary range as the other ES 3's who had the same experience and credentials as Breslin. (B-0168, Wirtz at 30). However, the memorandum did not recognize Breslin's specific job experience within the highly technical SIRB. The memorandum also did not address the salary differential between the ES 3's in the SIRB. (B-0168, Wirtz at 30). According to Wirtz, Ramsey failed to explain specifically what occurred with respect to Breslin's advanced hire request and it was not fully explained in this memorandum why Robertson's was considered more creditable and applicable. (B-0175, Wirtz at 59).

On September 11, 2002, Breslin filed a Step One Grievance pursuant to Merit Rule Procedure. After hearing the evidence, it was determined that Breslin was being paid commensurate with other ES 3's in the Division of Air and Waste Management. However, the ES 3's in SIRB do not have the same job duties as those ES 3's in other branches of the Division of Air and Waste Management. (B-0175, Wirtz 61; B-0119 Will at15). Breslin continued with Step Two of her grievance process which took place in or around November of 2002. (B-0061). Again, Breslin's grievance was denied stating that Breslin "knowingly accepted a lower salary back in 1996 when she accepted the position." (B-0061). By December 2002, Robertson was being paid $43,962; while Breslin was being paid $39,158 for essentially the same work. (B-0010). Breslin continued to appeal her grievance and moved on to the Third Step Hearing of the

7

grievance process which took place on or about January 23, 2003. (B-0063 - 0065). The State

Personnel Office determined that Breslin had not been discriminated against by DNREC. (B-

0063 - 0065).  Additionally, the State Personnel Office determined that Breslin had not waited

too long to file her grievance in response to DNREC's position that Breslin should have filed her

grievance in late 1996 or early 1997. (B-0063 - 0065).

In or around February 11, 2003, Breslin resigned from her position as an ES 3, effective

February 24, 2003, noting in her resignation letter,

> ***It is a fact that after 6 years of full performance as an
> Environmental Scientist III, I continue to be compensated in the
> same manner as a new employee. In addition, my salary remains
> far lower than my counterparts in SIRB. This fact has become
> completely unacceptable to me and I must move into an
> employment situation in which I will be fairly and equitably
> compensated.***

(B-0028). The Delaware Department of Labor Investigated Breslin's Charge of Discrimination

and found in favor of Plaintiff, citing reasonable cause that violations of Title VII and 19 Del. C.

§ 711 had occurred. (B-0057 - 0059). Breslin received a Notice of Reasonable Cause Finding

from the Delaware Department of Labor dated June 30, 2004. (B-0060). Breslin was issued a

Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") on February

14, 2005 and she filed her Complaint in this Court on May 13, 2005.

8

## **STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered" where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome under the governing substantive law. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A dispute over a material fact must be "genuine", *i.e.*, the evidence is such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.* "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995).

To survive a motion for summary judgment, Defendant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n.10, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

In the present matter, the current record, together with depositions and documents establishes that there are several genuine issues of material fact. Therefore, DNREC is not entitled to summary judgment as a matter of law.

9

## SUMMARY OF ARGUMENT

**I.**    Reviewing the evidence and construing all inferences in the light most favorable to Breslin, the Court should conclude that Breslin has adequately alleged that DNREC's failure to approve her advance salary request in 1996, along with DNREC's continued failure to pay Breslin a salary comparable to Robertson, was part of a continuing violation of failing to pay Breslin for her equal skill, effort and responsibility under the specific working conditions in SIRB.  In addition to suffering a denial of equal pay and discrimination with each pay check she received through the end of her employment, Breslin can point to Ramsey's determination in or around August 2002 denying Breslin equal compensation for equal work and experience, as direct evidence of DNREC's discriminatory acts.

**II.**    DNREC willfully paid her in violation of the Equal Pay Act when it knowingly paid her significantly less than Robertson, despite the fact that both employees were performing "equal work"— work of substantially equal skill, effort and responsibility, under similar working conditions. 29 U.S.C. § 206 et seq.  Breslin's Complaint was filed on May 14, 2005 and her employment ended with DNREC on February 24, 2003. Thus, the applicable period for calculating damages as a result of DNREC's violation of the Equal Pay Act would be between May 14, 2002 and February 2003.

**III.**    Reviewing the evidence presented in this case in the light most favorable to Breslin, the Court must conclude that a jury could reasonably find for Breslin on her Title VII claim. The evidence is clear that she was the only female ES 3 in SIRB and that she was being paid significantly less than the other male ES 3's in SIRB, despite the fact that she had more years of

service. Accordingly, Breslin's salary should have been comparable to Robertson's salary because both employees had equal skill and experience and were performing nearly the exact same job. Accordingly, the Court should deny Defendant's Motion for Summary Judgment as it relates to Breslin's Title VII claim.

**IV.** DNREC has attempted to put forth evidence that it based Breslin's pay on the merit rules as an affirmative defense to Breslin's violation of the Equal Pay Act claim. DNREC points to the Grievance process and the finding that females in the ES 3 position within DAWN were being paid slightly higher than males. However, Breslin worked in SIRB, a branch within DAWN and as such her salary should be compared to those ES 3 who work in SIRB because ES 3's in SIRB had equal responsibility under similar working conditions. Further, it was Tazelaar and Ramsey, not the merit rules, who discriminated against Breslin by denying her request for an advance hire in 1996 and again in 2002, despite her qualifications. Therefore, the Court should conclude that whether DNREC has clearly demonstrated its affirmative defense is a question for the jury. Accordingly, the Court should deny Defendant's Motion for Summary Judgment as it relates to Breslin's Equal Pay Act claim.

## I.    BRESLIN'S TITLE VII CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS

DNREC errantly suggests that the statute of limitations has run to the extent that Breslin's Title VII claim relates to the November 1996 denial of the advanced salary request. (Def's Op. Brf. at 27). However, "the continuing violation theory allows a 'plaintiff [to] pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant.'" *Rush v. Scott Speciality Gasses, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997) (quoting *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)).

To do this, Breslin must show that DNREC committed at least one discriminatory act within the statutory period. *Id.* at 481 (citing *West*, 45 F. 3d at 754). Breslin must also show that the prior discriminatory act was not an isolated incident, but part of a continuing pattern of discrimination. *Id.* "A plaintiff satisfying these requirements may present evidence and recover damages for the entire continuing violation, and the 300-day filing period will not act as a bar." *Id.* If the alleged discriminatory conduct is a "continuing violation," the statute of limitations begins to run on the date of the last occurrence of discrimination, rather than the first. *Miller v. Beneficial Management Corporation*, 977 F.2d 834, 844 (3d Cir. 1992). "Because Miller received her last Government Relations paycheck sometime around October 1998, her EEOC Charge and Federal Claim alleging pay discrimination were timely filed." *Id.* Reviewing the evidence and construing all inferences in the light most favorable to Breslin, the Court should conclude that Breslin has adequately alleged that DNREC's failure to approve her advance salary request in 1996, along with DNREC's continued failure to pay Breslin a salary comparable to Robertson was part of a continuing violation of failing to pay Breslin for her equal skill, effort

12

and responsibility under the specific working conditions in SIRB. "The employer's continued failure to pay the member of the lower paid sex the wage rate paid to the higher paid predecessor constitutes a prima facie continuing violation." *Miller*, 977 F.2d at 844. Also, it is no defense that the unequal payments began prior to the statutory period. *Id.*

Further, DNREC asserts that Breslin must point to a discriminatory act that occurred "roughly between March 24, 2002, and September 24, 2002," the date Breslin filed her Complaint with the Delaware Department of Labor. In addition to suffering a denial of equal pay and discrimination with each pay check she received through the end of her employment, Breslin can point to Ramsey's determination in or around August 2002 denying Breslin equal compensation for equal work and experience, as direct evidence of DNREC's discriminatory acts. Although Ramsey acknowledges that Breslin's experience and credentials were similar to that of Robertson's, she errantly denied Breslin's request for an increase in her salary. The reason for this, according to Ramsey, was that Breslin was being paid within the same salary range as the other ES 3's in the Division of Air and Waste Management (hereinafter "DAWM") who had the same experience and credentials as Breslin. (B-0168, Wirtz at 30). However, Ramsey did not compare Breslin's salary to those ES 3's who worked in SIRB as the relevant employee pool. Rather, Ramsey's conclusion was based on the larger universe of ES 3 throughout DAWN. The inherent problem with Ramsey's analysis is that the SIRB unit performed a separate set of job duties that applied to the SIRB department. Both Wirtz, Will, Breslin, and Rittberg testified that the job duties performed by an ES 3 in SIRB differ from those job duties of an ES 3 in a different branch. (B-0175, Wirtz at 61; B-0119, Will at 15; B-0083, Breslin at 63; Rittberg at 12). What is perhaps more important, however, is that Ramsey's memorandum did not recognize Breslin's specific job experience within the highly technical

SIRB, and also did not address the salary differential between Breslin and the male ES 3's in the SIRB. (B-0168, Wirtz at 30). Moreover, Ramsey's memorandum failed to explain specifically what occurred with respect to Breslin's advanced hire request in 1996 and it was not fully explained in this memorandum why Robertson's experience was considered more creditable and applicable. (B-0175, Wirtz at 59).

DNREC contends in its Opening Brief that Breslin cannot make any showing that Ramsey's actions constituted discrimination against Breslin because Ramsey is a female. (Def's Opening Brf at 29). This contention is wholly without merit. To accept this proposition would lead to the conclusion that no female in a position of authority could or would ever have the audacity to discriminate against another female on the basis of gender. This outcome is absurd. Further, Wirtz, a female Program Manager II, testified that State's implementation of its own policy concerning advanced hire requests was, in fact, discriminating against Breslin as a woman. (B-0165, Wirtz at 21). Wirtz opined that although Breslin was accomplished, she was not being compensated accordingly by DNREC and Wirtz testified that she had concerns that DNREC was violating Federal and State laws against discrimination. (B-0167, Wirtz at 29). Based on Wirtz's review of both advanced hire request packages that were completed in 1996, Breslin's advanced hire request was treated differently because Breslin is female and Robertson is male. (B-0181, Wirtz at 81). Although the merit rules prohibit discrimination based upon gender, Wirtz opined that DNREC may be in violation of this part of the merit rules with respect to Breslin and Robertson. (B-0183, Wirtz at 93). Consequently, DNREC's argument that Breslin cannot make a showing that Ramsey's actions constituted discrimination is disingenuous at best and as such, the applicable statute of limitations does not bar this claim.

Further, DNREC argued unsuccessfully during Breslin's grievance process that Breslin had waited too long to file her grievance concerning the denial of her advance salary request in 1996. However, the State Personnel Office determined that Breslin's grievance was not untimely because Merit Rule 20.6 states in pertinent part,

> *"Grievants shall file, within 14 calendar days of the date of the grievance matter or the date they could reasonably be expected to have knowledge of the grievance matter, a written grievance which details the complaint and relief sought with their immediate supervisor."*

(Merit Rule 20.6). Breslin filed her grievance within the aforementioned time limits after she received information that a second request to have her salary leveled up had been denied by Ramsey. DNREC did not dispute that Breslin was not aware of her second denial until sometime in October 2002, thus making her grievance timely. (B-0063 - 0065).

## II. DNREC WILLFULLY PAID BRESLIN IN VIOLATION OF THE EQUAL PAY ACT. THEREFORE, BRESLIN'S EQUAL PAY ACT CLAIM IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

DNREC correctly asserts that if DNREC willfully paid Breslin in violation of the Equal Pay Act, the statute bars recovery for any wages accrued more than 3 years prior to the filing of her cause of action. *Campana v. City of Greenfield*, 102 F. Supp. 2d 1063, 1065 (E.D. Wisconsin 2000). In this case, Breslin is alleging that DNREC willfully paid her in violation of the Equal Pay Act when it knowingly paid her significantly less than Robertson, despite the fact that both employees were performing "equal work"— work of substantially equal skill, effort and responsibility, under similar working conditions. 29 U.S.C. § 206 *et seq*.

Breslin's Complaint was filed on May 14, 2005 and her employment ended with DNREC on February 24, 2003. Thus, the applicable period for calculating damages as a result of DNREC's violation of the Equal Pay Act would be between May 14, 2002 and February 2003.

Additionally, Breslin is entitled to an additional equal amount for liquidated damages, reasonable attorney's fee and costs of this action, in accordance with 29 U.S.C. §216(b).

## III.  GENUINE ISSUES OF MATERIAL FACT EXIST. THEREFORE, DNREC IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT I, THE TITLE VII GENDER DISCRIMINATION CLAIM.

When considering claims under Title VII, a court must use the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination. *Green*, 411 U.S. at 802. When a plaintiff's claim is for unequal pay, a plaintiff must demonstrate that "employees of the opposite sex were paid differently for performing…work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000) (citing *E.E.O.C. v. Delaware Dept. Of Health and Social Servs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989); *Miller*, 977 F.2d at 846.

Reviewing the evidence presented in this case in the light most favorable to Breslin, the Court must conclude that a jury could reasonably find for Breslin on her Title VII claim. Plaintiff has put forth evidence that she was the only female ES 3 in SIRB and that she was being paid significantly less than the male ES 3's in SIRB, despite the fact that she had more years of service. (B-0047 - 0048). Neither Breslin or Robertson had experience working in SIRB prior to being hired and both Breslin and Robertson began their training in this field at the same time, which included their attendance of the OSHA 40-hour "HAZWOPER" training at the Environmental Protection Agency (hereinafter "EPA") training facility in Cincinnati, Ohio. (B-0109, Robertson at 20). Breslin and Robertson were initially being paid the same salary of $22,998 and neither employee was credited with any prior work experience when they began their employment at DNREC. (B-0010; B-0153, Wirtz at 11). However, by December 2002,

Robertson's salary was $43,962.26 and Breslin was being paid $39,158.75. (B-0010). The evidence is clear that while Breslin's job as an ES 3 was not identical to Robertson's, it was substantially similar. (B0010 – 0014). [6] Accordingly, Breslin's salary should have been comparable to Robertson's salary.

Since Breslin has established a prima facie case of discrimination, the burden shifts to DNREC. Now DNREC must "articulate some legitimate, nondiscriminatory reason" for its conduct. *Green*, 411 U.S. at 802. DNREC's affirmative defense is that "the difference in pay between Ann Breslin and any other employee (including Keith Robertson) was caused by the application of the State of Delaware Merit Rules." (Def's Op. Brf. at 32). Assuming *arguendo* that DNREC has produced a sufficient reason for its actions, the burden shifts back to the Plaintiff to demonstrate that the reasons articulated by DNREC are merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). To defeat a motion for summary judgment, Breslin must point to some evidence from which the "factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale*, 200 F.3d at 105.

Sometime after she requested an advanced hire, Breslin was told that it was Sharon Tazelaar (hereinafter "Tazelaar"), in HRO, who denied her request; while approving the advance hire request of Keith Robertson. [7] Ramsey, however, cannot recall any specific conversations with Tazelaar concerning the reasons for denying Breslin's advance hire request. Based on her

---

[6] **Question by Ms. Brewington:** Would you agree that Ann Breslin's job description was similar to yours? **Answer by Robertson:** Yes, with the following caveat: The state Superfund –or rather the state Superfund branch which became the SIRB branch really was divided into three programmatic sections. One handled the federal Superfund sites…The techniques, the knowledge base really were very much the same except for maybe the regulatory difference, but there we are. (**B-0107, Robertson at 11-12**).

[7] Counsel for Plaintiff was informed by Counsel for Defendant that Ms. Tazelaar is currently incapacitated and therefore, unable to be deposed.

review of the documentation in 2002, Ramsey felt that DNREC followed the applicable policies

at that time. (Def's Op. Brf. at 33). Interestingly, however, DNREC has failed to produce any

documents concerning the reasons specifically set forth by Ms. Tazelaar for denying Breslin's

advance hire request in 1996, except for a document which states in part, "*It appears that due to*

*the fact that [Breslin] had no experience at the Environmental Scientist III level, her request for*

*an advanced salary was denied.*" (emphasis added) (B-0027). This statement is entirely

inaccurate. Kalbacher's memorandum and supporting documentation requesting Breslin's

advanced hire state in pertinent part,

> ***Ann Breslin has proven that she can successfully perform at the***
> ***ES 3 level and is currently handling an intensive workload at full***
> ***ES 3 responsibility level. Ann has demonstrated excellent project***
> ***management and organization skills in managing her assigned***
> ***Superfund Sites.***

(Request for Advance Promotion for Competitive Hire of Ann Breslin, (B-0015 - 0017).

> ***This EPPA reflects a work load equivalent to an Environmental***
> ***Scientists III. In addition, I have provided Ann's Performance***
> ***Plan for 1996, which again reflects a workload equivalent to all***
> ***Environmental Scientists III's in the Site Investigation and***
> ***Restoration Branch.***

(Ann Breslin's Advance Hire Request, Supplemental Information, (B-0018 - 0026). Thus, the

advance hire request submitted on behalf of Breslin clearly demonstrates that she was

performing at the ES 3 level at the time of her request. While Ramsey is of the opinion that

DNREC followed applicable policies in denying Breslin's request, Wirtz and Blevins opined that

based on their review of the documents, the reason for an advance hire request denial for Ann is

not apparent when compared to the approval of the advance hire for Keith Robertson. (B-0047 -

0048). Further, Wirtz testified that it was her belief that Breslin's advanced hire request was

treated differently because Breslin is female and Robertson is male. (B-0181).

In support of DNREC's denial of Breslin's advance salary request, Ramsey opined that Robertson's advanced salary request demonstrated prior experience in project management sufficient to justify an advance salary. (Def.'s Op. Brf. at 33). Assuming this contention as true, the obvious question that follows is: If Robertson's previous project management skills were so impressive, why wasn't he credited with this "prior experience in project management" when he first became employed with DNREC in 1994? As previously noted, both Breslin and Robertson began their employment with DNREC earning the very same salary of $22,998 and neither employee was credited with any prior work experience. (B-0010; B-0163, Wirtz at 11). Although DNREC contends that it has a custom of placing a great emphasis on project management when determining whether or not to grant an advanced hire request, the obvious conclusion is that DNREC chose to emphasize Robertson's brief stint as an alleged project manager *now* in an effort to distinguish between two equally qualified and experienced ES 3's.

Moreover, even if Robertson's credentials were above those of Breslin's, the evidence is undisputed that Breslin's qualifications were clearly over and above those required at the minimum qualification level for an ES 3. As such, she should have received a salary that reflected more than just 80% of the midpoint because her qualifications were, in fact, above the minimum qualifications. First, the minimum education requirement for an ES 3 is a bachelor's degree. (B-0008). Prior to 1996, Breslin obtained a Master's of Science Degree in Geo-Environmental Sciences which is a minimum requirement for an ES *4*. (B-0015). Second, Breslin had worked in SIRB since January 1, 1994. Therefore, at the time of her advance hire request, Breslin had 2.916 years of scientist experience with the SIRB. Additionally, Breslin had 2.243 years of related experience as a wetlands scientist and laboratory assistant. What is more, the evidence is clear that Wirtz, Blevins, Rittberg, Will, and Kalbacher could not explain or

identify the reason(s) why Breslin did not receive an advanced salary request.[8]  Simply put, the
reasons provided by DNREC for continuing to pay Breslin 80% of the midpoint when she was
clearly above entry level, while paying all other male ES 3's in SIRB significantly more for the
same work is a pretext for discriminating against Breslin, the only female ES 3 in SIRB.

Finally, DNREC contends that the Merit Rules do not provide a mechanism to increase
Breslin's salary when the rules have been fairly applied.  But that's just it. The rules in this case
have not been fairly applied.  Surely, Breslin has offered evidence from which a jury could
reasonably disbelieve DNREC's reason for paying Breslin significantly less than Robertson.
Therefore, on this record, the Court should deny Defendant's Motion for Summary Judgment as
it relates to Plaintiff's Title VII claim.

## IV.    GENUINE ISSUES OF MATERIAL FACT EXIST.    THEREFORE DNREC IS NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT II, THE EQUAL PAY ACT CLAIM.

Claims made under the Equal Pay Act also follow a burden-shifting analysis. *Stanziale*,
200 F.3d at 107.  A plaintiff establishes a prima facie case by showing that employees of
opposite sex were paid differently for performing "equal work," that is, work of substantially
equal skill, effort and responsibility, under similar working conditions.  *Delaware Dept. of
Health*, 865 F.2d at 1414.  Once a plaintiff has established a *prima facie* case, which consists of

---

[8] *See* Kalbacher memorandum which states in part, "Accordingly, her professional and technical skill should be considered fully adequate and relevant, far beyond the entry level, to the requirements of the ES 3 for which she has been recommended."  (B-015).

*See* Blevins' memorandum which stated in pertinent part that it was not clear based on his review of the documents why Breslin's request was denied and Robertson's was granted.  (B-0045 - 0046).

Wirtz testified based on her review of documents she could not understand why Breslin's advance hire request was denied and Robertson's was granted.  (B-0165 – 0166, Wirtz at 19,20,23).

Will testified that he did not feel that she should be making entry level and he supported her request for an advanced hire  (B-0122, 0124, 0125, 0127, 0129, Will at 29,37,39,41,47,56)

Rittberg testified that he supported her advanced hire request comparable to Keith Robertson's.  (B-0142).

the same requirements as a *prima facie* case under Title VII, the burden of persuasion shifts to the defendant to show that one of the statutory affirmative defenses applied.  *Id.*  The affirmative defenses include payment made pursuant to "(i) seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 296(d).

In order to prevail on summary judgment, the employer must prove one of the affirmative defenses "so clearly that no rational jury could find to the contrary."  *Delaware Dept. of Health*, 865 F.2d at 1414.  The employer must submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons *could* explain the wage disparity, but that the employer's proffered reasons *do in fact* explain the wage disparity.  *Delaware Dept. of Health*, 865 F.2d at 1415 (*stating that "the correct inquiry was…whether, viewing the evidence most favorably to the [plaintiff], a jury could only conclude that the pay discrepancy resulted from "one of the affirmative defenses.) Id.*

Reviewing the evidence presented in the light most favorable to Breslin, the Court should conclude that a jury could reasonable find for Plaintiff on her Equal Pay Act claim.  As discussed *infra*, Plaintiff has established a *prima facie* case.  In response, DNREC has attempted to put forth evidence that it based Breslin's pay on the merit rules.  In support of this contention DNREC points to the Grievance process and the finding that Ramsey's office surveyed the salaries of the female employees in the ES 3 position in <u>DAWM</u> and that females in the ES 3 position within <u>DAWN</u> were being paid slightly higher than males.  (Def's Op. Brf. at 36).  However, Breslin worked in <u>SIRB</u>, a branch within DAWN and as such her salary should be compared to those ES 3's who work in <u>SIRB</u> because ES 3's in <u>SIRB</u> had equal responsibility under similar working conditions.  *Delaware Dept. of Health*, 865 F.2d at 1414.  Both Wirtz,

Will, Breslin, and Rittberg testified that an ES 3 in <u>SIRB</u> does not have the same job duties as an ES 3 in a different branch. (B-0175, Wirtz at 61; B-0118 – 0119, Will at 11,15; B-0083, Breslin at 63; B-0135, Rittberg at 12). Accordingly, Breslin's salary should be compared to the salaries of ES 3's who have the same job duties as Breslin and who work under similar working conditions. Had the State Office Personnel done this during the grievance procedure, he or she would have determined that Breslin, the only female in SIRB, was making $5,000 less than the next lowest paid male ES 3, notwithstanding her many years of experience.

Further, DNREC hangs its hat on the merit rules in an effort to explain the significant difference in pay between Breslin and her male counterparts in SIRB. However, it was Tazelaar and Ramsey, not the merit rules, who discriminated against Breslin by denying her request for an advance hire in 1996 and again in 2002, despite her qualifications. It was Tazelaar and Ramsey, not the merit rules, who decided to approve Robertson's request for an advanced hire, while denying Breslin's even though both employees had equal skill and experience and were doing the exact same job. The merit rules at Rule 2.0 state in pertinent part:

> ***Discrimination in any human resource action covered by these rules or Merit system law because of race, color, national origin, sex, religion, age, disability, sexual orientation, or other non-merit factors is prohibited.***

2.0 Non-Discrimination (B-0186).

Because Breslin has put forth some evidence demonstrating that gender may have been a factor in making a decision about Breslin's salary, as discussed above, and because DNREC bears the burden on this issue, the Court should conclude that whether DNREC has clearly demonstrated its affirmative defense is a question for the jury. Accordingly, the Court should deny Defendant's Motion for Summary Judgment as it relates to Breslin's Equal Pay Act claim.

## CONCLUSION

Under the *McDonnell Douglas* analysis, Plaintiff has raised a genuine issue of material fact as to each of the elements of her prima facie case of discrimination under Title VII and a violation of the Equal Pay Act.  Further, Plaintiff has countered any notion that she was being paid less than her male counterparts in accordance with the merit rules as DNREC errantly suggests.  Based upon the foregoing reasons, Plaintiff respectfully requests that this Court dismiss Defendant's Motion for Summary Judgment in this action.

Respectfully submitted,

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (DE #2407)
Lori A. Brewington, Esquire (DE #4522)
1509 Gilpin Avenue
Wilmington, DE  19806
(302) 777-4680
jmartin@margolisedelstein.com
lbrewington@margolisedelstein.com
Attorneys for Plaintiff

DATED:  September 27, 2006

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

ANN L. BRESLIN,                            :
                                           :
        Plaintiff,                         :
                                           :        C.A. NO. 05-290 (JJF)
        v.                                 :
                                           :
STATE OF DELAWARE                          :        JURY TRIAL DEMANDED
DEPARTMENT OF NATURAL                      :
RESOURCES AND ENVIRONMENTAL:
CONTROL,                                   :
                                           :
        Defendant.                         :

## CERTIFICATE OF SERVICE

I, Lori A. Brewington, Esquire, do hereby certify that on September 27, 2006, I

electronically filed *Plaintiff's Answering Brief in Opposition to Defendant's Motion for*

*Summary Judgment* with the Clerk of the Court using CM/ECF which will send

notification of such filing to the following attorney-of-record below:

Valerie S. Csizmadia, DAG
Department of Justice
102 West Water Street
Dover, DE 19904-6750

MARGOLIS EDELSTEIN

Jeffrey K. Martin, Esquire (#2407)
Lori A. Brewington, Esquire (#4522)
1509 Gilpin Avenue
Wilmington, Delaware 19806
(302) 777-4680 phone
(302) 777-4682 facsimile
jmartin@margolisedelstein.com
lbrewington@margolisedelstein.com
Attorneys for Plaintiff Ann L. Breslin

Dated:  September 27, 2006